## Stearns Lumber Company v. Ross.

(Decided October 5, 1911.)

Appeal from Whitley Circuit Court.

Land—Boundary—Location.—This suit is brought to locate a tract of land patented to Thomas M. King, now claimed by appellee Ross. Held, that while the patent calls for only 100 acres, the evidence shows that the boundary contains 300 acres or more, and that it was never intended that the patent should include any land across Paunch Creek. The patent and the evidence all show that the patentee never claimed on but one side of the creek.

J. N. SHARP, E. L. STEPHENS for appellant.

TYE & SILER and I. N. STEELEY for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

Thomas M. King obtained a patent from the Commonwealth to the following boundary of land:

"Beginning at four spruce pine on the west cliff of Paunch creek, corner of said King's upper survey known as the Allen Stephens' survey, running thence with a line of said Stephens' survey, N. 84 W. 100 poles to a stake in said line and corner of said King's

Patton Thompson survey; thence with the Thompson
survey N. 41 W. 277 poles to a stake corner of said sur-
vey; thence leaving the survey, N. 35 E. 20 poles to a
stake on top of the main cliff West of Paunch creek;
thence along the cliff binding on the meanders thereof,
when reduced to a straight line, S. 59 E. 144 poles;
thence S. 46 E. 205 poles still binding on the cliff to the
beginning.''

King conveyed this land to appellee, Ross. A
greater portion of it is bounded by a cliff of Paunch
creek. Appellant purchased from one Bryant the tim-
ber on a tract of land on the opposite side of the cliff
and creek. It cut and removed the timber and appellee
sued for the value and recovered a judgment for $300.00.
Appellant claims it was entitled to a peremptory in-
struction at the conclusion of appellee's testimony, but
if not then at the conclusion of all the testimony. This
is the only question necessary for this court to de-
termine.

If appellee's boundary extended across the creek,
the judgment should be affirmed, but if it only extended
to the edge of the cliff on his side of the creek, then ap-
pellant was entitled to a peremptory instruction. For
appellee to get the boundary of land upon which the
timber was situated, the call ''N. 35 E. 20 poles to a
stake on top of the main cliff west of Paunch creek,''
must be extended 157 poles, which would cross the
creek at the end of 20 poles. It will be noticed that the
beginning point is west of the creek and by reason of
the winding of the very crooked creek the extension of
the 20 pole line 157 poles to the top of the cliff, will go
to a point which is on the west side of the creek at that
place, but on the opposite side of the creek from the be-
ginning point. The calls given in the patent do not
mention the fact that the creek is ever crossed to get
back to the beginning, nor does it speak of crossing the
creek on the 20 pole line. Paunch creek is a stream of
considerable length, and according to the most of the
proof, it passes the land in dispute in a deep gorge at
the foot of almost unbroken cliffs which are from one to
three hundred feet above the stream. The undisputed
proof shows that for several miles there are only a few
places where it is possible to find a passage across the
creek. There is a break in this cliff near the 20 pole
line caused by another stream flowing into Paunch creek,

but about one hundred feet from this point the cliff sets in again and continues to the beginning corner. The course and distance to be run from the end of the twenty pole line is "S. 59 E. 144 poles." If this line is run from the end of the 20 pole line it will not meander with the cliff as the patent says it should, nor will it do so if that line is extended as claimed by appellee, so this line cannot aid us in arriving at the true boundary of the land, nor is the call "S. 46 E. 205 poles" of any benefit. It is conceded that the surveyor in surveying the land for King did not actually run the lines, but that he extended the boundary by protraction from the end of the 20 pole line around to the beginning, and in our opinion, he never intended to cross the creek; that it was his intention to confine the survey to the meanders of the cliff to the beginning. The patent to Thomas King was introduced as evidence and gives the boundary as above copied, and on the back thereof is a plat of the land made at the time it was patented by King, which shows conclusively that it was all on one side of the creek. While the plat does not show the creek to be a crooked one as it really was, yet, it shows that it was the intention to locate the land on that side of the creek and confine the patent to the meanders of the cliff. While the patent calls for only one hundred acres, the testimony shows that when the boundary is confined to one side of the creek it contains three hundred or more acres. The patent also shows that Burrell King was one of the chain carriers when the land was entered. He is a son of Thomas King, and he testified that they did not cross the creek; that it was never intended that the patent should include the land beyond the creek, and that his father never claimed any land on the opposite side of the creek.

In the case of Bell County Land & Coal Co. v. Hendrickson, 24 Ky. L. R., 371, the court said:

"The original plot of the survey may always be used in evidence to show the position of the land, and is evidence of the most potent kind in determining the original location of the lines and corners."

As stated, the plat in the case at bar does not show that the land patented by King extended across the creek, and Burrell King's testimony shows that his father never claimed on but one side of the creek.

For these reasons, the judgment is reversed, and if the evidence is practically the same upon another trial, the lower court will give a peremptory instruction in favor of appellant.